FILED & ENTERED

NOV 1 8 2013

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | |
| RUBÉN TERRÓN-HERNÁNDEZ | Chapter 7 |
| SYLVETTE PÉREZ-COLLADO, | Case No. 13-08012 (ESL) |
| Debtor(s) | |

OPINION AND ORDER

This case is before the court upon Banco Popular de Puerto Rico's ("BPPR") "Urgent Motion to Dismiss and Requesting Order Barring Debtors from Re-Filing for Bankruptcy" (the "Motion to Dismiss", or Docket No. 10). In the Motion to Dismiss, BPPR argues that debtors Rubén Terrón Hernández and Sylvette Pérez Collado (the "Debtors") are ineligible to file the above-captioned bankruptcy case as a result of Section 109(g)(2) of the Bankruptcy Code. For the reasons stated below, the Court concludes that the Debtors are ineligible to commence the above-captioned bankruptcy case and, consequently, the Motion to Dismiss is hereby granted.

PROCEDURAL BACKGROUND

A.    The First Bankruptcy Case:

The Debtors filed their first voluntary bankruptcy petition on March 9, 2012, under Case No. 12-01808-ESL (the "First Bankruptcy Case").

i. BPPR's Motion to Lift the Stay:

On July 31, 2012, in the First Bankruptcy Case, BPPR filed a Motion for Relief from Stay (the "BPPR Motion to Lift Stay"). See, Docket. No. 80 of Case No. 12-01808.

The BPPR Motion for Lift of Stay was the subject of numerous replies, preliminary hearings, and other procedural matters.

00096854; 1

On April 2, 2013, the Court held a hearing on BPPR's Motion to Lift Stay. At the hearing, the Court concluded that:

> after considering the monthly adequate protection payments of $6,000 that debtors must make, a per diem factor of $370, a debt of $4,900,000 and a value of $6,000,000, and in light of the events leading to this hearing, ruled that: Debtors shall provide adequate protection to BPPR as follows: First, debtors and BPPR are granted 90 days to negotiate the terms of the sale. Second, debtors and BPPR are granted 30 days thereafter to file a joint motion for the sale of the property. **Upon failure to comply with this court's order, the stay shall be deemed lifted in favor of BPPR, without need of further notice or hearing**.

See, Docket No. 235 of Case No. 12-01808. (emphasis supplied).

The Debtors failed to comply with the Court's Order and, accordingly, after certain motions and reconsiderations, on July 8, 2013, the Court entered an order confirming and granting the lifting of the automatic stay in favor of BPPR. See, Docket No. 262 of Case No. 12-01808.

ii. Doral Bank's Motion to Lift Stay:

Doral Bank ("Doral"), secured creditor of Debtors' residence, also filed a Motion for Relief from Stay (the "Doral Motion to Lift Stay") in the First Bankruptcy Case. See, Docket No. 83 of Case No. 12-01808.

After a preliminary hearing and further pleadings filed, the Court granted, on April 2, 2013, Doral's motion to lift stay. See, Docket No. 235 of Case No. 12-01808.

iii. Debtors' Voluntary Dismissal:

On July 16, 2013, after the Court had granted both the BPPR Motion to Lift Stay and the Doral Motion to Lift Stay, the Debtors filed their Motion Requesting the Voluntary Dismissal of the First Bankruptcy Case (the "Motion Requesting Dismissal") See, Docket No. 264 of Case No. 12-01808.

00096854; 1

In the Motion Requesting Dismissal, the Debtors alleged and represented to the Court the

basis for voluntarily dismissing the First Bankruptcy Case as follows:

> Considering that Debtors' subject property is the only income producing property to the estate and its most valuable asset, and that the same most surely will be subject to a foreclosure proceeding to be resumed by BPPR pursuant to the court's order at Docket No. 262, the original purpose of reorganization under Chapter 11 is now extinct. In this case, there are no longer assets to administer that may produce any significant amount to return as dividends to unsecured creditors. There have been material changes inasmuch as the lift of stay motions filed by Doral Bank and BPPR have been granted and Debtors will most probably will end up losing their only two real estate assets with any value.
>
> ....
>
> Conversion of the case would not be in the best interests of creditors and the estate because, in the absence of the subject property on which the lift of stay order has been issued, the estate would be insolvent, would have insufficient income and would be incapable of producing any kind of dividends to unsecured creditors nor to pay any priorities or administrative expenses. The lift of stay orders basically rendered the Debtors insolvent by taking away their only asset. Therefore, a chapter 7 conversion would result in a no-asset case.
>
> WHEREFORE, Debtors respectfully request the voluntary dismissal of their chapter 11 voluntary petition for relief, in the best interests of creditors and the estate.

See Motion Requesting Dismissal, Docket No. 264 at page 6-7 of Case No. 12-01808.

On August 6, 2013, after a hearing was held on the Motion to Dismiss, the Court granted

the Debtors' request for voluntary dismissal. See, Docket No. 237 of Case No. 12-01808.

On August 12, 2013, the Court entered an Order dismissing the First Bankruptcy Case.

See, Docket No. 238 of Case No. 12-01808.

iv. BPPR's Actions Following the Dismissal and Order Lifting the Stay:

BPPR states in its Motion to Dismiss that after the Court granted BPPR's Motion to Lift

the Stay, BPPR renewed the foreclosure process in the Local Court Case and scheduled the first

public judicial sale in its local foreclosure action for September 30, 2013 at 9:15 a.m.

B.    The Second Bankruptcy Case:

00096854; 1

On September 28, 2013, the Debtors filed their second bankruptcy filing by commencing the above-captioned chapter 7 bankruptcy case (the "Second Bankruptcy Case").

The Second Bankruptcy Case was commenced 47 days after the dismissal of the First Bankruptcy Case.

On October 2, 2013, BPPR filed the Motion to Dismiss, alleging, as described above, that, pursuant to Section 109(g)(2) of the Bankruptcy Code, the Debtors are ineligible to re-file for bankruptcy for a period of at least 180 days following the dismissal of the First Bankruptcy Case. BPPR also requested a bar against re-filing of 180 days and filed a separate motion requesting sanctions against the Debtors and their counsel.

On October 10, 2013, the Debtors filed their "Reply to Request for Order and Sanctions" (the "Debtors' Opposition") (Docket No. 15) alleging that "there are two potential buyers interested in the commercial property" and that its sale, through chapter 7, "will result in benefits of all creditors". Debtors' Opposition, paragraphs 5 and 6.

The Court held a hearing on the Motion to Dismiss and the Debtors' Opposition on November 8, 2013. At the hearing, the Debtors argued that the Second Bankruptcy Case was filed in "good faith", that a sale of their commercial real estate could be achieved by the Chapter 7 trustee and provide a payment in full to BPPR and a dividend to unsecured creditors, and that the Court should evaluate the applicability of Section 109(g)(2) to the Second Bankruptcy Case under a "totality of the circumstances" approach. BPPR argued that there were no firm offers whatsoever that would provide any dividend to unsecured creditors, as there was no equity in the commercial real estate, and that the Debtors' allegations were not only unfounded but also irrelevant to a determination on whether the Debtors are eligible under Section 109(g)(2) of the Bankruptcy Code. BPPR also alleged that there was no reference to a "good faith" standard in

00096854; 1

Section 109 (g)(2) and that said section, and the case law interpreting it, did not include or articulate a "totality of circumstances" approach. BPPR also asserts that the Debtors did not cite to any authority to support their interpretation of Section 109(g)(2). Accordingly, BPPR stated that considering the facts of the case and the case law described below from this Circuit interpreting Section 109(g)(2), the Debtors were not eligible to re-file and, thus, the Second Bankruptcy Case should be dismissed. BPPR also requested sanctions against the Debtors and their counsel, and the Court ordered the Debtors to respond to within twenty one days.

Applicable Law and Analysis

Section 109(g)(2) of the Bankruptcy Code establishes that:

> Notwithstanding any other provision of this section, no individual...may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> …
>
> (2)     the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2).

Recently, the United States Bankruptcy Appellate Panel for the First Circuit ("BAP") considered the application of Section 109(g)(2) in In re Rivera, 494 BR 101 (B.A.P. 1st Cir. 2013). Therein, the BAP discussed the three approaches that have been used by different courts in applying Section 109(g)(2) of the Bankruptcy Code. Id. As the BAP stated:

> Three distinct views have been articulated—a mandatory approach, a discretionary approach, and a causal connection approach. See In re Richter, 2010 WL 4272915, at *2 (Bankr. N.D. Iowa 2010).
>
> Courts following the mandatory approach consider § 109(g) to be unambiguous. Adhering to the U.S. Supreme Court's admonition in Connecticut National Bank v. Germain that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," these courts interpret § 109(g)(2) as an eligibility requirement mandating dismissal regardless of the debtor's motives in filing a second case within the 180-day time bar. See In re Andersson, 209 B.R. 76, 78 (6th Cir. BAP 1997) (citing Conn. Nat'l Bank v.

00096854; 1

Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146 117 L. Ed. 2d 391 (1992)); Kuo v. Walton, 167 B.R. 677 (M.D. Fla. 1994) (citing In re Tooke, 133 B.R. 661 (Bankr. M.D. Fla. 1991)).

Courts taking the discretionary approach construe § 109(g)(2) as discretionary to the extent "the creditor is not unfairly prejudiced, a dismissal would be absurd or illogical, or when the creditor (and not debtor) acted in bad faith." In re Richter, 2010 WL 4272915, at *3 (Bankr. N.D. Iowa 2010). These courts suggest that an absolutist interpretation of § 109(g)(2) could lead to "absurd results" in rewarding creditors acting in bad faith while punishing good-faith debtors or otherwise not effectuating Congress's intent in enacting § 109(g)(2) to curb abuse by a limited group of debtors. In re Richardson, 217 B.R. 479, 482 (Bankr. M.D. La. 1998); see In re Luna, 122 B.R. 575, 577 (9th Cir. BAP 199[1]) ("Mechanical application of section 109(g)(2) would reward [the creditor] for acting in bad faith and punish [the debtor] for acting in good faith."); In re Santana, 110 B.R. 819 (Bankr. W.D. Mich. 1990) (holding that courts should apply § 109(g)(2) as Congress intended it—to operate in only a limited number of cases).

The third approach…the causal connection approach—interprets § 109 (g)(2) as requiring some relationship between a debtor's request for a voluntary dismissal and a creditor's request for relief from the automatic stay. See In re Copman, 161 B.R. 821, 824 (Bankr. E.D. Mo. 1993) (finding "no connection" between the debtor's voluntary dismissal of the case and the creditor's request for relief from stay). It stakes out a middle ground between the other two approaches. The underlying rationale for the causal connection approach is that § 109(g)(2) was enacted "for the sole purpose of curbing abusive repetitive bankruptcy filings by debtors seeking to overcome the grant of relief to a creditor from a stay in a prior case" and the statutory language is a direct response to that concern. In re Beal, 347 B.R. 87, 92 (Bankr. E.D. Wis. 2006) (citing S. Rep. No. 65, 98th Cong. 1st Sess. 74 (1983)). Without § 109(g)(2), § 1307(a), for example, offers debtors the unlimited right to voluntarily dismiss their cases and then refile at their own convenience to, in effect, "string along a foreclosing creditor." In re Copman, 161 B.R. 821, 823 (Bankr. E.D. Mo. 1993) (citing In re Santana, 110 B.R. 819, 821 (Bankr. W.D. Mich. 1990)); See In re Ramos, 212 B.R. 29, 30 (Bankr. D.P.R. 1997).

In re Rivera, at 105-106. (internal citations omitted).

As the BAP stated, "[w]hile the First Circuit has not directly interpreted the meaning of Section 109(g)(2), at least two courts in this circuit have adopted the causal connection approach We need not adopt a particular approach in this case, however, as this case clearly falls within

Section 109(g)(2) under any approach". Id. See also In re Durham, 461 B.R. 139, 142 (Bankr. D. Mass. 2011); In re Ramos, 212 B.R. 29, 30 (Bankr. D.P.R. 1997).

Similar to the BAP, this court does not need to adopt a particular approach in this case, as the Debtors are ineligible to commence this bankruptcy proceeding under any of the approaches discussed above.

First, under the mandatory approach, the Debtors would be ineligible to commence the Second Bankruptcy Case as the First Bankruptcy Case was dismissed following the order granting BPPR's Motion for Relief from Stay, and the Debtors commenced the Second Bankruptcy Case within 47 days after the First Bankruptcy Case was dismissed. Thus, under the mandatory approach, this Court would look no further than the uncontested facts described herein and, accordingly, would be required to dismiss this bankruptcy case.

Second, the discretionary approach is inapplicable and would also require the Court to dismiss this bankruptcy case as the Debtors did not present any evidence nor made any allegations that BPPR had acted in bad faith.

Finally, under the causal connection approach, for the Court to find that the Debtors are ineligible, it would need to find "some relationship" between the Debtors' Motion Requesting Dismissal and BPPR's Motion to Lift Stay. Here, the Debtors represented to the Court, in their Motion Requesting Dismissal, as detailed above, that the dismissal was sought as a result of the Court granting BPPR's Motion to Lift Stay, and the consequences to the estate that such an order entailed. At a minimum, the Debtors admitted in their Motion Requesting Dismissal that the dismissal was related to the BPPR Motion to Lift Stay. Accordingly, based on the Debtors' own admissions, and since they filed their petition 47 days after the voluntary dismissal of their Chapter 11 case, under the causal approach, Debtors are ineligible to file under 109 (g)(2).

00096854; 1

In sum, as stated above, the Court concludes that the Debtors are ineligible to file under Section 109(g)(2) of the Bankruptcy Code under either the mandatory, discretionary, or causal connection approach detailed above, and, thus, the Court need not adopt at this juncture a particular approach.

### Conclusion

For the reasons set forth above, I hereby **ORDER** the dismissal of Debtors' bankruptcy case pursuant to § 109(g)(2), with, as requested by BPPR in its Motion to Dismiss, a prohibition from filing another bankruptcy petition for 180 days from the date of entry of this order. We thus **GRANT** BPPR's Urgent Motion to Dismiss and Requesting Order Barring the Debtors from Re-Filing for Bankruptcy.

SO ORDERED.

In San Juan, Puerto Rico, this 18th day of November, 2013.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

00096854; 1