IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    CASE NO. 13-08012 (ESL)

RUBEN TERRON HERNANDEZ                                    CHAPTER 7
SYLVETTE PEREZ COLLADO

    Debtors

## OPINION AND ORDER

This case is before the court upon the *Motion for Sanction, Reasonable Expenses, and Attorneys' Fees Pursuant to Federal Bankruptcy Rule 9011* filed by Banco Popular de Puerto Rico ("BPPR") (Docket No. 11) alleging that the signing by Debtors' counsel and subsequent filing of the second bankruptcy petition was done in violation of 11 U.S.C. § 109(g)(2) and Fed. R. Bankr. P. 9011(b). The Debtors filed a *Reply to Creditor's Request for Sanctions and in Compliance With Court Order* (Docket No. 41) arguing that when the second petition was filed they were undergoing negotiations with BPPR, that due to lack of cooperation from BPPR an agreement was not reached in good faith, and that the petition was filed with the intention to pay creditors. For the reasons stated below, BPPR's *Motion for Sanction, Reasonable Expenses, and Attorneys' Fees Pursuant to Federal Bankruptcy Rule 9011* is hereby granted.

### Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

### Procedural Background

The Debtors filed their first bankruptcy petition under Chapter 11 of the Bankruptcy Code on March 9, 2012 (Case No. 12-01808 Docket No. 1).

On July 31, 2012, BPPR and Doral Bank moved for relief from stay under Section 362 (Case No. 12-01808 Docket Nos. 80 and 83). The Debtors opposed and a hearing was held on

-1-

August 28, 2012 (Case No. 12-01808 Docket No. 108).  The court entered minute orders at the hearing granting the Debtors 30 days to reach a stipulation with both BPPR and Doral (Case No. 12-01808 Docket No. 109).

On October 4, 2012, BPPR moved for the entry of an order lifting the stay in its favor as more than 60 days had lapsed since the initial hearing on the motion to lift stay and because the Debtors has breached the stipulation on the use of cash collateral (Case No. 12-01808 Docket No. 133).  Doral Bank also moved the court for an order lifting the automatic stay on November 2, 2012 (Case No. 12-01808 Docket No. 149).  The matters were heard on January 22, 2013 and continued to April 2, 2013 (Case No. 12-01808 Docket No. 193 and 194).  On April 2, 2013 the court entered a minute order lifting the stay in favor of Doral and stating the terms of adequate protection payments to BPPR (Case No. 12-01808 Docket No. 235).

On July 8, 2013, the court entered an *Order* (Case No. 12-01808 Docket No. 262) stating, *inter alia*, the following:

> Lastly, the court concludes that pursuant to its April 2, 2013 Order it was clearly established that if the parties did not reach an agreement within ninety (90) days to negotiate the terms of the sale of the property, the automatic stay would be lifted in favor of BPPR.  The Debtors and BPPR were granted thirty (30) days thereafter in the event that both parties had agreed to the sale of the property. The ruling afforded the Debtors an opportunity to complete a sale in excess of the secured debt. The opportunity did not materialize.

Thus, upon the Debtors' failure to comply with the April 2, 2013 *Order* (Case No. 12-01808 Docket No. 235) the automatic stay was lifted in favor of BPPR, without need of further notice or hearing.

On July 16, 2013, the Debtors filed a *Motion Requesting Voluntary Dismissal* (Case No. 12-01808 Docket No. 264) pursuant to 11 U.S.C. §1112(b) (1) stating that:

> [t]he instant bankruptcy petition was triggered by the imminent execution of a judgment entered by the Puerto Rico Court of First Instance on December 9, 2009, for BPPR and against the Debtors' subject property. The same was obtained through a collection and foreclosure proceeding filed by the principal creditor in the instant case, BPPR.  Therefore, this litigation relates to Debtors' default in

credit facilities provided by BPPR. Before filing the petition, Debtors attempted to negotiate with BPPR, but their negotiation efforts did not succeed. Pursuant to the outcome of this bankruptcy filing, BPPR was going to foreclose on the subject property owned by the Debtors.

In their *Motion Requesting Voluntary Dismissal*, the Debtors also stated that "[a]s such, Debtors no longer see the protection of the bankruptcy code as the most effective solution to their economic troubles and foresee negotiations outside of bankruptcy as the most beneficial to the Debtors and all parties involved" (Case No. 12-01808 Docket No. 264, p. 6). Moreover, the Debtors requested the voluntary dismissal of their Chapter 11 petition based upon the following reasons: (i) the original purpose of the reorganizations is extinct because their only income producing property and their most valuable asset will be subject to a foreclosure proceeding to be resumed by BPPR; (ii) the Debtors believe that they may negotiate and reach a settlement outside the bankruptcy court involving the sale of assets and repayment of creditors; (iii) "…even BPPR has admitted, through its motions for lift of stay, that it would rather execute on its collateral outside the bankruptcy process, even though it has had the opportunity to accept various significant offers made during the bankruptcy case;" and (iv):

> [c]onversion of the case to Chapter 7 would not be in the best interests of creditors and the estate because, in the absence of the subject property on which the lift of stay order has been issued, the estate would be insolvent, would have insufficient income and would be incapable of producing any kind of dividends to unsecured creditors nor pay any priorities or administrative expenses. The lift of stay orders basically rendered the Debtors insolvent by taking away their only assets. **Therefore, a Chapter 7 conversion would result in a no-asset case.** (Case No. 12-01808 Docket No. 264, pp. 6-7) (emphasis added).

On August 6, 2013, the court held a previously scheduled hearing to consider the approval of the Debtors' disclosure statement. At the onset of the hearing, the court questioned the parties if there was any objection to the voluntary dismissal of the case as the time to object had lapsed the day before. The Debtors requested that their *Motion Requesting Voluntary Dismissal* be held in abeyance to allow them thirty (30) days to negotiate the sale of the property over which BPPR held a lien. BPPR objected indicating that it had not been part of the

negotiations and that it was an undersecured creditor. The court determined that it would not benefit the estate (unsecured creditors) to hold the case open if BPPR is an undersecured creditor and has not consented to the sale. Thus, the court granted the *Motion Requesting Voluntary Dismissal* and denied the request to defer the entry of the order dismissing the same (Case No. 12-01808 Docket No. 273). On August 12, 2013, the court entered an *Order* dismissing the case upon the *Motion Requesting Voluntary Dismissal* filed by the Debtors (Case No. 12-01808 Docket No. 274). See In re Terrón-Hernández, 2013 WL 6074164, 2013 Bankr. LEXIS 4910 (Bankr. D.P.R. November 18, 2013). On September 16, 2013, Case No. 12-01808 was closed.

On September 28, 2013, the Debtors filed their second bankruptcy petition (the instant case) under Chapter 7 of the Bankruptcy Code, that is, forty-seven (47) days from the date of dismissal of the prior petition. See Docket No. 1.

On the same date, the Debtors filed a *Motion Pursuant to 11 U.S.C. § 362(c)(3) Request for Extension of the Automatic Stay and Expedited Ruling* (Docket No. 4) stating that: (i) the Debtors had filed a previous bankruptcy case on March 9, 2012; (ii) the previous case was dismissed because the Debtors were not able to confirm the Chapter 11 plan; (iii) the Debtors have made several attempts to sell the commercial property, and the same have not been successful due to lack of cooperation from the bank; (iv) there are two potential buyers interested in the commercial property; (v) the assigned Trustee will have full control of the commercial property and will make the necessary arrangements to benefit all the creditors; and (vi) there are substantial changes in this bankruptcy petition, and that the assignment of the Trustee to liquidate the assets will be in the best interest of creditors, specially unsecured creditors.

On October 2, 2013, BPPR filed an *Urgent Motion to Dismiss and Requesting Order Barring the Debtors' from Re-Filing for Bankruptcy* (the "*Motion to Dismiss*", Docket No. 10) alleging that the Debtors had filed this bankruptcy case in willful disregard of 11 U.S.C. §

-4-

109(g)(2), which prohibits an individual from being a debtor under the Bankruptcy Code on or before 180 days from the dismissal of the prior bankruptcy case if the debtor sought the dismissal of such case following the filing of a secured creditor of a motion for relief from stay. On the same date, BPPR filed a separate *Motion for Sanctions, Reasonable Expenses, and Attorneys' Fees Pursuant to Federal Bankruptcy Rule 9011* (the "*Motion for Sanctions*", Docket No. 11) sustaining that the signing of Debtors' counsel and subsequent filing of the second bankruptcy petition was done in violation of 11 U.S.C. § 109(g)(2) and Fed. R. Bankr. P. 9011(b). BPPR argued that the second bankruptcy petition is frivolous, not warranted by existing law, and is being presented for an improper purpose. BPPR requested that the court impose appropriate sanctions under Fed. R. Bankr. P. 9011(c) against the Debtors and their counsel and award BPPR the reasonable expenses and attorneys' fees incurred in opposing the filing of the second bankruptcy petition. On October 10, 2013, the Debtors filed their *Reply to Request for Order and Sanctions* (Docket No. 15) contending that: (i) the previous case was dismissed because the Debtors could not confirm the reorganization Chapter 11 plan; (ii) the Chapter 7 Trustee will make the necessary arrangements to have a consummated sale of the property which will benefit all creditors; and (iii) the Debtors' intention has always been to repay all creditors, since the value of the property is greater than the lien that encumbers it. On October 14, 2013, BPPR filed its *Opposition to Debtors' Motion for Extension of the Automatic Stay* (Docket No. 17) claiming that: (i) after the voluntary dismissal of the first case, it renewed the foreclosure process in state court; (ii) BPPR proceeded to prepare and submit before the State Court Marshal of the court notices on September 12, 2013; (ii) BPPR had the auction notices published on September 14, 2013 and September 21, 2013 in conformity with the applicable Puerto Rico Rules of Civil Procedure in both El Nuevo Día and Primera Hora; (iii) the first judicial sale was scheduled for September 30, 2013; (iv) as a result of the second bankruptcy case, the foreclosure sale scheduled for September 30, 2013 was cancelled; (v) the Debtors have not shown by clear and convincing evidence that the second bankruptcy petition

was filed in good faith as to the creditors to be stayed in conformity with 11 U.S.C. § 362(c)(3)(B); and (vi) the Debtors second bankruptcy petition satisfies two (2) of the tests set forth in Section 362(c)(3)(C)[1] which evince that the second petition was not filed in good faith.

On October 8, 2013, the court entered an *Order and Notice* (Docket No. 14) scheduling a hearing to consider BPPR's *Motion to Dismiss* and *Motion for Sanctions* for November 8, 2013.

On October 22, 2013, a hearing was held in which the Debtors failed to appear and the court denied Debtors' request for continuation of the automatic stay for the reasons stated in BPPR's opposition. See Docket Nos. 22 (*Minute Entry*) and 23 (*Audio File*).

On October 24, 2013, the Debtors filed a *Motion Requesting the Reconsideration of Order* (the "*Motion for Reconsideration*", Docket No. 24) stating that their counsel did not appear at the October 22, 2013 hearing was due to inadvertence although he did appear at the bankruptcy court for two (2) other cases in the same courtroom: In re Temsco NC, Inc., Case

---

[1] Section 362(c)(3)(C) provides that:

[F]or purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—

(i) as to all creditors, if—
  (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
  (II) a previous case under any of chapters 7,11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—
    (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
    (bb) provide adequate protection as ordered by the court; or
    (cc) perform the terms of a plan confirmed by the court; or
  (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—
    (aa) if a case under chapter 7, with a discharge; or
    (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

(ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor. 11 U.S.C. § 362(c)(3)(C).

No. 13-06907) and In re José L. Sosa Barbosa, Case No. 12-09090. The Debtors prayed the court to reconsider its order denying their request to extend the automatic stay. On October 29, 2013, the court entered an *Order and Notice* (Docket No. 29) scheduling a hearing to consider the Debtors' *Motion for Reconsideration* for November 8, 2013.

On November 8, 2013, a hearing was held to consider BPPR's *Motion to Dismiss* and *Motion for Sanctions* and the Debtors' *Motion for Reconsideration*. The court held that the Debtors are ineligible to file the instant bankruptcy petition pursuant to 11 U.S.C. § 109(g). BPPR was asked to submit a draft order following this court's conclusions and analysis. The court also granted the Debtors and their counsel 21 days to sur-reply to BPPR's *Motion for Sanctions*. See Docket Nos. 35 (*Audio File*) and 36 (*Minute Entry*).

On November 18, 2013, the court entered an *Opinion and Order* (Docket No. 39) dismissing the instant case pursuant to Section 109(g) (2) and prohibited the Debtors from filing another bankruptcy petition for 180 days.

On November 18, 2013, the Debtors, through their counsel, filed their *Reply to [BPPR's] Request for Sanctions and in Compliance with Court Order* (the "*Reply*", Docket No. 41). The Debtors and their counsel allege that they have always acted in good faith and were continuously negotiating with BPPR. Thus, the Debtors and their counsel pray the court to take the causal connection approach to interpret 11 U.S.C. § 109(g)(2).

On November 22, 2013, BPPR filed a *Request for Leave to Sur-Reply and Tendering Sur-reply to Debtors' Reply to Request for Sanctions and in Compliance with Court Order* (Docket No. 45) sustaining that in their *Reply*, the Debtors had alleged that they "were making continuous efforts to repay their creditors," that "the day the instant petition was filed Debtors were still in good faith having negotiations with BPPR," that "due to lack of cooperation from BPPR an agreement could not be reached," and that there "were two potential buyer[s] for the commercial property". Notwithstanding, BPPR claims that the Debtors' allegations are false and unfounded since BPPR has not engaged in any negotiations with them since the dismissal of

the first bankruptcy case and was in fact preparing to foreclose the collateral at the first public judicial sale which was scheduled for September 30, 2013. BPPR further contends that the Debtors did not cite any case law or legal authority to sustain that a debtor engaged in alleged "efforts to repay their creditors," alleged "good faith negotiations" or having allegedly a "potential buyer for the commercial property" are exceptions to the eligibility standard under Section 109(g)(2).

<u>Applicable Law and Analysis</u>

A request for sanctions under Fed. R. Bankr. P. 9011 must be made separately from other motions or requests. The motion must be served in the manner provided by Fed. R. Bankr. P. 7004 and within the time determined under Fed. R. Bankrl. P. 9006(d). <u>See</u> Fed. R. Bankr. P. 9014(b). Sanctions may not be imposed unless the respondent has been given notice and a reasonable opportunity to respond. The record of the case demonstrates compliance with these requirements. BPPR filed its request in a separate motion and due notice of the motion was given to the respondents. In addition, the respondents had a reasonable opportunity to present their position, as a hearing was held. Moreover, the respondents were given further time to expand on their position after the hearing was concluded.

Fed. R. Bankr. P. 9011 is derived from Fed. R. Civ. P. 11. Thus, "Rule 11 jurisprudence is largely transferable to Rule 9011 cases." <u>In re D.C. Sullivan Co.</u>, 843 F. 2d 596, 598 (1st Cir. 1988). Fed. R. Bankr. 9011 "require an attorney to conduct himself in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system. Subjective good faith is not the issue; generally Rule 9011 demands that counsel's actions comport with an objective standard of lawyerly performance." <u>Id.</u> at 598-599, citing <u>Muthig v. Brant Point Nantucket, Inc.</u>, 838 F. 2d 600, 604-605 (1st Cir. 1988); <u>Thomas v. Capital Security Services</u>, 836 F.2d 866, 873 (5th Cir. 1988); <u>INVST Financial Group v. Chem-Nuclear Systems</u>, 815 F.2d 391, 401 (6th Cir. 1987), <u>cert. denied</u>, 484 U.S. 927 (1987); <u>Eastway Const. Corp. v. City of New York</u>, 762 F. 2d 243, 253-254 (2nd Cir. 1985).

The purpose of Fed. R. Bankr. P. 9011 is to "deter baseless filings in bankruptcy court and thus avoid unnecessary judicial effort, the goal being to make proceedings in that court more expeditious and less expensive. The rule imposes sanctions on persons violating the rule, and, it is hoped, will act to deter future conduct of the same nature." Alan N. Resnick & Henry J. Sommer, 10 Collier on Bankruptcy ¶9011.01 (16th ed. 2013); White v. Burdick (In re CK Liquidation Corp.), 321 B.R. 355, 362 (B.A.P. 1st Cir. 2005) ("The purpose of Rule 11 is to deter abusive litigation tactics and streamline the litigation process by lessening frivolous claims").

Fed. R. Bankr. P. 9011(b) provides that:

[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-- (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief. Fed. R. Bankr. P. 9011(b).

Fed. R. Bankr. P. 9011(b) has four subdivisions which may be further divided in two categories; namely, the frivolousness clauses and the improper purpose clause. See In re Am. Telecom Corp., 319 B.R. 857, 867 (Bankr. N.D. Ill. 2004). Fed. R. Bankr. P. 9011(b)(2)-(4), "require[] that a party's attorney must perform a reasonable preliminary investigation of the facts and the applicable law before filing a paper in federal court." Id. at 867. Fed. R. Bankr. P. 9011(b)(1) requires courts to apply an objective standard to determine whether a document was or not presented for an improper purpose. "Courts may infer the purpose of a filing from the consequences of a motion, such as delaying the proceedings or creating 'a persistent pattern of

clearly abusive litigation.'" In re CK Liquidation Corp., 321 B.R. at 365, citing Bay State Towing Co. v. Barge Am. 21, 899 F. 2d 129 (1st Cir. 1990); Aetna Life Ins. Co. v. Alla Med. Servs., Inc., 855 F. 2d 1470, 1476 (9th Cir. 1988).

In order to determine whether the Debtors' counsel filed the second petition for an improper purpose, the court must weigh the action in light of 11 U.S.C. § 109(g)(2). This court found that the filing of the second petition met all approaches described in In re Rivera, 494 B.R. 101 (B.A.P. 1st Cir. 2013), including the causal connection approach. See In re Terrón-Hernández, 2013 WL 6074164 at *5, 2013 Bankr. LEXIS 4910 at *11. The second filing violates the intent of Section 109(g)(2) of curbing abusive repetitive filings aimed at preventing debtors from frustrating creditors' efforts by abusing the bankruptcy process. The Debtors filed a second petition within 180 days from the voluntary dismissal of a prior petition and following two requests for relief from the automatic stay. Therefore, counsel violated Fed. R. Bankr. P. 9011 by representing to the court that the second filing was warranted by existing law and was not presented for an improper purpose, that is, frustrating the rights of BPPR afforded by Section 109(g)(2).

Moreover, Section 707(b)(4)(C) provides in pertinent part that:

[t]he signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has--
(i)     performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
(ii)     determined that the petition, pleading, or written motion—
(I)     is well grounded in fact; and
(II)     is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law and does not constitute an abuse under paragraph (1). 11 U.S.C. §707(b)(4)(C).

This provision, in addition to Fed. R. Bankr. P. 9011, requires that all attorneys perform a reasonable investigation into the circumstances giving rise to the documents before filing them in a Chapter 7 case. See Lafayette v. Collins (In re Withrow), 405 B.R. 505, 511 (B.A.P. 1st Cir. 2009). The wording in Section 707(b)(4)(C) is stricter that Fed. R. Bankr. P. 9011 as factual allegations must be "well grounded" instead of having "evidentiary support" and the legal

argument must be made in "good faith" and not merely being "nonfrivolous." The signature of an attorney in a petition certifies that the attorney made a reasonable investigation into the factual circumstances and that the filing is warranted by existing law.

The court finds that the Debtors' counsel in filing the second bankruptcy petition was in direct contravention to Fed. R. Bankr. P. 9011(b)(2) and 11 U.S.C. § 704(b)(4)(C), given that these provisions require attorneys, in this case Debtors' attorney, to perform a reasonable preliminary investigation of the facts and the applicable law before filing a bankruptcy petition under Chapter 7 of the Bankruptcy Code. The court finds that Debtors' attorney knew that the Debtors had filed a previous bankruptcy case since he filed a motion requesting the extension of the automatic stay pursuant to 11 U.S.C. § 362(c)(3) on the same date as the date the Chapter 7 bankruptcy petition was filed. See Docket Nos. 1 and 4. Moreover, the filing of this second bankruptcy petition was not warranted by existing law in conformity with Fed. R. Bankr. P. 9011(b)(2). "A legal argument is not warranted by existing law if it is based on legal theories that are plainly foreclosed by well-established legal principles and authoritative precedent, unless the pleading plainly argues for a reversal or change of law and presents a nonfrivolous argument to support that position." In re CK Liquidation Corp., 321 B.R at 362, citing In re Willis Furniture Co., 148 B.R. 691, 694 (Bankr. D. Mass. 1992); Dibbs v. Gonsalves, 921 F. Supp. 44, 47-49 (D.P.R. 1996); Aetna Casualty & Sur. Co. v. Kellogg, 856 F. Supp. 25, 32-33 (D.N.H. 1994). In the previous Chapter 11 bankruptcy petition, the Debtors requested the voluntary dismissal of the case and stated with particularity that conversion of the case to a Chapter 7 would not be in the best interests of creditors and the estate (Case No. 12-01808 Docket No. 264, pp. 6-7). The request for voluntary dismissal of the prior petition was made after BPPR had moved for relief from the automatic stay provisions of Section 362(a) and after the court had granted the request. These facts appear in the documents, orders and docket entries in Case No. 12-01808. Thus, the Debtors were barred under Section 109(g)(2) from

filing another bankruptcy petition for 180 days subsequent to the *Order* dismissing the prior bankruptcy case entered on August 12, 2013 (Case No. 12-01808 Docket No. 274).

The court concludes that Debtors' counsel filed the second bankruptcy petition based on an improper purpose pursuant to Fed. R. Bankr. P. 9011(b)(1), that is, to delay and frustrate the continuance of the foreclosure proceedings in state court of a real property which was being executed by BPPR. In the prior bankruptcy case, the Debtors requested dismissal of the case and they particularly stated that "[c]onversion of the case to Chapter 7 would not be in the best interests of creditors and the estate because, in the absence of the subject property on which the lift of stay order has been issued, the estate would be insolvent, would have insufficient income and would be incapable of producing any kind of dividends to unsecured creditors nor to pay any priorities or administrative expenses. The lift of stay orders basically rendered the Debtors insolvent by taking away their only assets. Therefore, a Chapter 7 conversion would result in a no-asset case." (Case No. 12-01808, Docket No. 264, pp. 6-7). In its *Request for Leave to Sur-Reply and Tendering Sur-Reply to Debtors Reply to Request for Sanctions and in Compliance with Court Order* (Docket No. 45), BPPR stated that certain of Debtors' allegations in their *Reply to Creditor's Request for Sanctions and in Compliance with Court Order* (Docket No. 41) were unfounded and clarified that "BPPR has not engaged in any negotiations with the Debtors since at least the dismissal of the first bankruptcy case. In fact, BPPR was prepared to foreclose and take title to its collateral at the first public judicial sale scheduled for September 30, 2013 and was prevented from doing do as a result of the filing of the above-captioned second bankruptcy case on September 28, 2013." The court finds that the Debtors' position in the prior bankruptcy case when they requested the case to be dismissed and their current position in this second bankruptcy petition (which was filed 47 days after the Order dismissing the first case) are simply inconsistent. Such inconsistency denotes objectively that the Debtors' attorney in the instant case did not perform a reasonable inquiry to present well-grounded factual allegations and a good faith argument on existing law. Consequently, the filing of the second

bankruptcy petition was based on an improper purpose, which was to prevent the state court foreclosure proceedings.

Fed. R. Bankr. P. 9011(c)(2) provides in pertinent part:

[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, and order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b) (2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned." Fed. R. Bankr. P. 9011(c) (2).

Once a court determines that there is a violation of Fed. R. Bankr. P. 9011(b), it may impose an appropriate sanction.  The bankruptcy court has discretion to determine the type of sanction that is appropriate.   See In re Withrow, 405 B.R. at 514. However, the court's discretion to impose sanctions is restricted to the dual purpose Fed. R. Bankr. P. 9011 is designed to satisfy, namely, deterrence and compensation.  See Alan N. Resnick & Henry J. Sommer, 10 Collier on Bankruptcy ¶ 9011.06[1] (16th ed. 2013).  Fed. R. Bankr. P. 9011(c)(2) limits the sanction "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated" and in terms of compensation, "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Courts consider several factors when determining to impose a sanction under Fed. R. Bankr. P. 9011(c), which include the following: "whether the conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time

-13-

or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants." In re CK Liquidation Corp., 321 B.R. at 362, citing Dibbs v. Gonsalves, 921 F. Supp. at 55. Also see the Advisory Committee Notes to Fed. R. Civ. P. 11. In essence, sanctions under Fed. R. Bankr. P. 9011 "must be limited to what is sufficient to deter repetition of the offending conduct or comparable conduct by others." In re Nosek, 609 F.3d 6, 9 (1st Cir. 2010).

The court finds that this is the first time, that the court is aware of, that the Debtors' attorney has engaged in conduct contrary to Fed. R. Bankr. P. 9011(b) and Section 707(b)(4)(C) of the Bankruptcy Code. The pattern and conduct of counsel for the Debtors before this court has been characterized by professionalism. This case is an isolated event. Thus, the court admonishes the Debtors' attorney for his conduct, which resulted in unnecessary litigation. The court also imposes as a monetary sanction the amount of reasonable attorneys' fees and costs which BPPR had to incur to present its position on this matter.

## Conclusion

The court concludes that Debtors' counsel filed the second bankruptcy petition for an improper purpose pursuant to Fed. R. Bankr. P. 9011(b)(1), that is, to delay and frustrate the continuance of the foreclosure proceedings in state court of a real property which were being executed by BPPR. The court also finds that the filing of the second bankruptcy petition was in direct contravention to Fed. R. Bankr. P. 9011(b)(2) and 11 U.S.C. § 704(b)(4)(C), given that these provisions require attorneys, in this case Debtors' attorney, to perform a reasonable preliminary investigation of the facts and the applicable law before filing a bankruptcy petition under Chapter 7 of the Bankruptcy Code. The court further finds that Debtors' attorney knew that the Debtors had filed a previous bankruptcy case since he filed a motion requesting the extension of the automatic stay pursuant to 11 U.S.C. § 362(c)(3) on the same date as the date the Chapter 7 bankruptcy petition was filed. Moreover, the Debtors' position and reasoning for

requesting dismissal of its prior bankruptcy case and for filing the instant Chapter 7 bankruptcy petition are contradictory. Thus, BPPR's *Motion for Sanctions* (Docket No. 11) is hereby granted.

The court admonishes Debtors' attorney for his conduct and imposes as monetary sanctions the reasonable attorneys' fees and costs in favor of BPPR. BPPR shall file a statement within fourteen (14) days detailing the attorney's fees and costs incurred in opposing the filing this (second) petition.

SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of June, 2014.

Enrique S. Lamoutte
United States Bankruptcy Judge

-15-